DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF NEVADA,

OCTOBER TERM, 1870.

---

## PETER BRANDOW, Respondent, v. THE POCOTILLO SILVER MINING COMPANY, Appellant.

Mortgage on Pocotillo Mine—Description explained in Contract. Where a controversy arose between Brandow and the Pocotillo Silver Mining Company as to the ownership of eight hundred feet of mining ground, and on an amicable settlement a contract was entered into between them, in which, after reciting the controversy as to the said mining ground "known as the Pocotillo mine," Brandow agreed to convey to the company all his right, title and interest in "said claim or mine," and the company agreed, among other things, to pay Brandow fifteen thousand dollars, and that the contract should "operate as a lien by way of mortgage upon said mine" to secure the same: *Held*, that the mortgage was only to be upon the mining ground in controversy and not upon the Pocotillo mine in fact, which embraced much more ground.

Descriptions to be Understood as Used at Time of Contract. Where the words "Pocotillo mine" were used in a contract to designate certain mining ground therein specifically described: *Held*, that it could not be claimed that a larger tract of ground, afterwards known as the Pocotillo mine, was intended.

Appeal from the District Court of the Eighth Judicial District, White Pine County.

The plaintiff had judgment in the Court below for a foreclosure of his mortgage as against the entire eighteen hundred feet of min-

12

ing ground claimed by him to be " the Pocotillo Mine." A motion for new trial having been overruled, defendant appealed.

*Garber & Thornton*, for Appellant.

I. The recitals of the contract are controlling and conclusive on the question of construction. They are, that defendant claims to be the owner of certain mining ground known as the *Pocotillo mine;* that plaintiff claims to be the owner of the *same ground* and two hundred feet additional; that there has been a dispute between plaintiff and defendant as to the ownership *of said ground*, each claiming adversely to the other; that there has been litigation between them to determine the ownership of *said mining claim;* that it is agreed that plaintiff shall convey to defendant all his right, etc., to *said mine;* and that defendant does *inter alia* mortgage to plaintiff *said mine*.

No mistake being alleged and no reformation sought, the plain and unambiguous terms of the writing must be enforced. The intention is deemed to be what the language expresses.

The Court sits to enforce, not to make contracts. Nothing inconsistent or incompatible with the written words can be deemed to have been intended; no parol testimony is admissible, or if admitted, available to alter or vary the written terms of the contract; and effect must be given, if possible, to every term of the writing.

The case stands as if defendant had mortgaged the mine described in a certain deed, and that deed had described the eight hundred feet north. (*Vance* v. *Fore*, 23 Cal 435; *Jonas* v. *Johnson*, 18 How. U. S. 150.)

II. Brandow's testimony cannot be received against the language of the written recitals. If the defendant had simply mortgaged the Pocotillo mine, parol testimony would be admissible to show the subject matter, what was the Pocotillo mine; but this mortgage has dispensed with such testimony or the need of it— has rendered it unavailing—for it goes on in the writing itself and defines the meaning of the words " Pocotillo mine," itself identifies the subject matter by reference to other facts and documents. The recitals in the writing must prevail over all parol testimony in

conflict with it. (*Duke* v. *Errington*, 5 T. R. 522 ; 2 Parsons on Contracts, 502, note ; 3 Washburn on Real Property, 639 ; *Allen* v. *Holton*, 20 Pick. 464 ; *Richardson* v. *Scott R.*, &c., 22 Cal. 150 ; *Donahue* v. *McNulty*, 23 Cal. 417 : *Morrill* v. *Fischer*, 4 Exch. 591 ; 2 Parsons on Contracts, 552.

*Aldrich & Wren*, for Respondent.

I.   There is no room for construction. The " Pocotillo mine," whatever that may be, was intended. This description in itself was sufficient to warrant a foreclosure and sale without giving the particular boundaries ; but to render it entirely certain, resort was had to averment and parol proof as to what was known as the " Pocotillo mine."

The agreement describes the property affected as the " Pocotillo mine." The complaint avers and describes it, and the answer does not deny that the description given is a correct description of the " Pocotillo mine." The answer in effect admits the correct description of the " Pocotillo mine," but claims that it is not a description of the ground which the parties to the agreement intended to describe.

II.   If there is any question in this case, it is whether the mortgage should not be restricted to the eight hundred feet south of the monument. If there is any " Pocotillo mine," strictly speaking, it is this. But, as is shown by the testimony, the whole was embraced in the general designation.

III.   The findings, though not conclusive, should protect the respondent on appeal. It is beyond dispute correct, as matter of law, as well as of fact, that if the agreement referred to be considered alone, or in connection with the testimony of the description known as the " Pocotillo Mine," the whole eighteen hundred feet should be embraced by the judgment. But taking into consideration the other testimony, the case upon this point presented a question of fact, not of law. ( *Stephens* v. *Hollister*, 3 Washburn, 294 ; *Williston* v. *Morse*, 10 Metcalf, 17 ; *State of Nevada* v. *Yellow Jacket S. M. Co.*, 5 Nev. 415 ; *Lewis* v. *Covillaud*, 21 Cal. 178 ; *Morse* v. *Murdoch*, 26 Cal. 514.)

By the Court, WHITMAN, J. :

This action was for the foreclosure of a mortgage upon certain mining property; and the sole question presented for review is as to the extent of ground which should be covered by the decree. The appellant's grantors, upon the twenty-sixth of May, 1868, made a location of mining ground, the notice whereof appears in the books of the mining recorder, thus:

" We, the undersigned, claim eight hundred feet (800) on this quartz ledge, together with all dips, spurs and angles, running in a southerly direction from this monument; two hundred feet for discovery and two hundred feet each by location. We also claim one hundred feet on each side of the ledge for mining purposes. This shall be known as the Pocotillo Ledge and Belmont Company."

On the twenty-eighth of December, of the same year, respondent's grantors made their location, which appears on the records, thus:

" This is to certify that we, the undersigned, do locate and claim the first northern extension of the Pocotillo mine, claiming one thousand feet, with all the privileges of the White Pine District. This claim shall be known as the First Northern Extension of the Pocotillo Mine, District of White Pine, Lander County, State of Nevada."

Subsequently, a dispute arose and litigation ensued between the present parties, growing out of the claim of appellant that there was a mistake in the record of its grantor's notice; and it should have read, running in a northerly direction from the monument, instead of " in a southerly direction," as on the records. This litigation was compromised, and an agreement was executed between the parties, as follows:

" Whereas, the Pocotillo Silver Mining Company, a corporation organized under the laws of the State of California, claims to be owner of certain mining ground situated in the county of White Pine, State of Nevada, known as the Pocotillo mine; and whereas, Peter Brandow claims to be the owner of the same ground and two hundred feet additional; and whereas, there has been a dispute between the said parties as to the ownership of said ground, each

claiming adversely to the other ; and whereas, litigation has ensued between the said parties to determine the ownership of said mining claim, which litigation is not yet disposed of. Now, therefore, it is hereby covenanted and agreed by and between the said Pocotillo Silver Mining Company of the one part, and the said Brandow of the other part, as follows : That the said Brandow shall convey to the said Pocotillo Silver Mining Company all his right, title and interest in and to the said claim or mine. That in consideration of such conveyance, the said Pocotillo Mining Company shall, immediately upon the execution hereof, deliver to the said Brandow five hundred shares of the stock of said company, (the whole number of shares being four thousand) properly transferred on the books of the company to him the said Brandow or his assigns. That the said Pocotillo Silver Mining Company shall deliver to said Brandow the first fifteen thousand·dollars, in gold or silver coin, that shall be produced over and above working expenses from said mine, or the ores thereof now extracted, whether the same shall be reduced by said company or the ores sold at the dump for coin. It is further agreed, that upon the execution and delivery hereof, the said Pocotillo Silver Mining Company shall pay to the said Brandow one thousand dollars in gold coin.

" And for the faithful performance and fulfillment hereof, these presents shall operate as a lien, by way of mortgage, upon said mine and the ores thereof, and may be enforced in law or equity as such, the said Pocotillo Silver Mining Company hereby granting and conveying said mine to said Brandow as a security for the fulfillment hereof.

" And the said company further covenant and agree, that it will within thirty days commence to extract ores from said mine, and diligently prosecute the workings thereof, and that it will with all reasonable dispatch pay off the said sum of fifteen thousand dollars aforesaid, out of the net proceeds of said mine, as aforesaid.

" And if said sum of fifteen thousand dollars shall not be paid on or before six months from date, the said Brandow shall be at liberty to commence proceedings for the foreclosure hereof, and for enforcing payment of the same against said mine, it being expressly understood that the said Brandow shall have recourse only against said

mine in the event payment of said sum of fifteen thousand dollars is not made within the six months aforesaid."

This was accompanied by a deed from respondent to appellant, the description in which recites the granted property as " the First Northern Extension of Pocotillo, and being the same mine located on the twenty-eighth day of December, A. D. 1868, by J. S. Reece, H. W. Dunham, J. T. Quigley, W. J. Quigley and P. Fitzpatrick, and by them recorded on the same day in the mining records of said White Pine District, in Book E, page 229."

This somewhat voluminous statement of fact and recital of evidence has been made, as it really comprises the whole case, and is of itself so nearly decisive that very little more need be said. Default occurring in the payment specified in the agreement, respondent filed his bill and claimed a foreclosure upon eighteen hundred feet of mining ground, one thousand north and eight hundred south, alleging that such was the Pocotillo mine. The answer denied, and averred that the mine referred to in the agreement was only the one thousand feet north; making, as will be seen, no controversy about the most northern two hundred feet.

It would seem that the position of the answer was so self-evident that there could be no room for doubt. But respondent was admitted to testify, and swore that the Pocotillo mine " embraces eight hundred feet south of the Belmont monument (that referred to in the notice first recited) and one thousand feet north of the same monument. The defendant is in possession of all the said ground, and has been ever since about the fifteenth day of May, 1869. The Pocotillo Company has done work on the mine ; a portion of the work was done at the monument, and some work was done both north and south of the monument. The eight hundred feet and the one thousand feet comprise what is known as the Pocotillo mine."

Upon what theory this testimony was offered, or under what rule of evidence received, is difficult to imagine, and as difficult to perceive what possible bearing it has upon the case. If taken at all its possible weight, it is entirely in the present; and if so understood, of course could not affect the fact or intent of the parties at the date of the agreement. If it is to be construed as referring

back to the date of the papers, then it simply proves an absurdity; for if appellant was at that time claiming the eight hundred feet south, it had no controversy with respondent. If it was claiming the eight hundred feet north, as in fact it was, then it had at that time no pretence of right to the southern ground, no business upon it, no authority to work it.

But upon the evidence no real conflict arises. The facts are plain, simple, coherent. The parties were disputing about the northern eight hundred feet; both claimed it; the agreement says that it was known as the Pocotillo mine, and about that ground and no other they litigated, compromised, agreed and conveyed. It is a legal impossibility that any other could have been intended, as there was none other in dispute—none other about which any agreement was necessary, or could have been sensibly framed upon the basis set forth in the instrument quoted. The matter is too clear for argument.

Let the decree of the District Court be modified, as claimed by appellant, so as to include the north one thousand feet of what is now known as the Pocotillo mine, and no more.